1
2
3
4
5
6
7

8    **UNITED STATES DISTRICT COURT**

9    **EASTERN DISTRICT OF CALIFORNIA**

10

11   RONNIE M. HUNTER,                      )   Case No. 1:15-cv-01611-JLT
                                            )
12              Petitioner,                 )   ORDER GRANTING RESPONDENT'S MOTION
                                            )   TO DISMISS THE PETITION
13        v.                                )   (Doc. 21)
                                            )
14   AUDREY KING,                           )
                                            )   ORDER DENYING PETITIONER'S MOTION TO
15              Respondent.                 )   DISMISS PETITION FOR COMMITMENT
                                            )   (Doc. 23)
16                                          )
                                            )   ORDER DIRECTING THAT THE CLERK OF
17                                          )   COURT ENTER JUDGMENT AND CLOSE THE
                                            )   CASE
18                                          )
                                            )   ORDER DECLINING TO ISSUE CERTIFICATE
19                                          )   OF APPEALABILITY
                                            )
20   _____       )

21

22        Since 1997, Petitioner has been awaiting his trial on the state's claim he is a Sexually Violent

23   Predator. Petitioner sought many of the delays part in order to delay the determination until 2015,

24   when he turned 60 years old, to obtain a strategic advantage. Respondent moves the Court to dismiss

25   the petition. As much as the Court bemoans the state court's allowing this case to stagnant, it

26   **GRANTS** the petition.

27   **I.      DISCUSSION**

28        A.   Procedural Grounds for Motion to Dismiss

1

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

A respondent may file a motion to dismiss in lieu of an answer if it attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp.1189, 1194 & n.12 (E.D. Cal. 1982) (same).

A.     Procedural History in State Court

On July 11, 1997, the district attorney's office for County of Alameda filed a petition in state court to designate Petitioner as a sexually violent predator ("SVP") pursuant to California Welfare and Institutions Code § 6600 et seq. (Doc. 21, Exhibits ("Exh."), p. 1) At all times since the filing of the original petition, Petitioner has been represented in state court by counsel. Respondent's brief in support of the motion to dismiss recounts the chronology correctly, as confirmed by the documents appended to the motion to dismiss. However, rather than recount each court hearing over such a lengthy span of time, the Court will summarize the proceedings as follows: From the date of the original petition until August 22, 2003, the matter was repeatedly continued either by mutual consent or, more frequently, at the request of Petitioner and his counsel. (Exh. at pp. 5-8; 9-18; 19; 20; 37; 57-69; 70; 71-91) In a pleading dated April 25, 2003, Petitioner specifically noted that he did not want to proceed to trial yet. Id., p. 90-91. Several more continuances delayed the case through September 28, 2007. Id., pp. 94-120. Additional continuances delayed the case further until August 26, 2011. Id., pp. 126-150. The case was once again continued through August 13, 2012, at which time a probable cause finding was made regarding Petitioner's dangerousness. Id., pp. 156-164; 165-166. Again, continuances delayed the case until January 8, 2016. Id., pp. 167-203. At a hearing on that date, the Superior Court made a specific factual findings "that no trial demand was made in [that] Court prior to January 8, 2016." Id., p. 204. Petitioner has now filed with this Court a document entitled "Notice of No Time Waiver Stance," contending that at the January 8, 2016 hearing, Petitioner notified his

2

1  attorney that he would not agree to any further delays in his SVPA proceedings.  (Doc. 24)

2  Although the reasons for the extensive delays in this case are not entirely obvious, a review of

3  the present record strongly suggests that the delays were part of a defense strategy to obtain better

4  psychological results and to avoid any final determination of SVP status until after Petitioner reached

5  the age of sixty in 2015.  It appears the strategy was employed to attempt to take advantage of the

6  diminished dangerousness usually ascribed to older civil detainees.  In a letter dated August 4, 2014,

7  Petitioner's attorney from 2008 through 2014, Deborah Levy, explained the six-year delay during his

8  representation of Petitioner, as due to two factors.  First, Petitioner "never indicated [to Levy] that he

9  wanted a speedy trial."  Second, tactical reasons dictated the delay in that, after 2006, California

10  amended the SVPA to provide for an indefinite commitment based on a single trial, rather than

11  repeated two-year commitments, and because, when Petitioner turned sixty years old in 2015, the

12  formula for determining dangerousness would weigh that factor more heavily in Petitioner's favor.

13  (Exh. at pp. 209-210)  Petitioner's letters to Levy during those years confirm Levy's account.  (Exh. at

14  pp. 211-218)

15  On July 18, 2013, Petitioner filed a petition for writ of habeas corpus in the California Supreme

16  Court for which the high court requested an informal response.  On October 15, 2014, the California

17  Supreme Court denied the petition without prejudice to filing a petition for writ of mandate in the

18  California Court of Appeal if the SVPA proceedings had not commenced in Superior Court by the end

19  of 2015.  (Doc. 1, Attach. 1, p. 27)

20  B.  Abstention

21  Under principles of comity and federalism, a federal court should not interfere with ongoing

22  state criminal proceedings by granting injunctive or declaratory relief except under special

23  circumstances.  Younger v. Harris, 401 U.S. 37, 43-54 (1971).  Younger abstention is required when:

24  (1) state proceedings, judicial in nature, are pending; (2) the state proceedings involve important state

25  interests; and (3) the state proceedings afford adequate opportunity to raise the constitutional issue.

26  Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Dubinka v.

27  Judges of the Superior Court, 23 F.3d 218, 223 (9th Cir. 1994); Kenneally v. Lungren, 967 F.2d 329,

28  331–32 (9th Cir.1992). When all three of the Younger criteria are met, a court must abstain and

dismiss the federal action without prejudice, absent extraordinary or special circumstances which pose a great and immediate threat of irreparable injury. See Kennealy, 967 F.2d at 331 (Younger requires courts to abstain and dismiss federal actions that seek to enjoin state proceedings "unless one of the recognized exceptions to Younger is present"); see also Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 n.22(1976) (Younger abstention not discretionary once conditions met); Beltran v. State of California, 871 F.2d 777, 782 (9th Cir.1988) ("Younger abstention requires dismissal of the federal action.") (citations omitted, emphasis in original). Here, all three criteria for Younger abstention are present and Petitioner has not demonstrated that his is one of the extraordinary cases where an exception to Younger abstention is present.

First, it is apparent from the face of the petition that SVPA proceedings were ongoing when Petitioner filed the instant petition. See Beltran, 871 F.2d at 782 (for purposes of Younger abstention analysis, the pendency of state proceedings is determined "at the time the federal action was filed").

Second, the SVPA proceedings implicate important state interests, i.e., protection of the public from sexual predators.  See Hubbart v. Superior Court, 19 Cal.4th 1138, 1153, n.20 (1999) (SVPA proceedings serve "compelling" state interests of protecting the public and providing needed mental health treatment); Dannenberg v. Nakahara, 1998 WL 661467 at *2 (N.D. Cal.) ("[SVPA] commitment proceedings involve the important state interest of protecting the public from sexual predators.") (citation omitted); MacKenzie v. Ahlin, 2015 WL 4339370, at *2 (C.D. Cal. July 13, 2015)(same).

Third, abstention is appropriate because California SVPA proceedings provide an adequate opportunity to raise constitutional challenges.  Under this third Younger criterion, abstention is required unless a petitioner can demonstrate that state law "clearly bars" the assertion of his federal constitutional claims in the pending SVPA proceedings. See Middlesex, 457 U.S. at 432 (citation omitted).

Petitioner essentially complains that his designation as a sexually violent predator is based on unreliable psychological evidence and that the prosecution has failed to bring the issue to a resolution within a reasonable time period.  To the extent that these contentions implicate federal constitutional principles, Petitioner fails to demonstrate that these federal constitutional claims cannot be adequately

addressed either in the pending SVPA proceedings in Superior Court (to the extent the Superior Court has not already addressed them), or on any direct appeal therefrom. See, e.g., In re Smith, 42 Cal.4th 1251, 178 P.3d 446 (2008) (addressing claim that continuation of SVPA proceedings after felony conviction upon which SVPA petition was based was reversed on appeal violated prospective SVPA committee's constitutional rights to due process and equal protection); People v. Taylor, 174 Cal.App. 4th 920 (2009) (addressing due process, equal protection, double jeopardy, and ex post facto challenges to SVPA commitment); People v. Hubbart, 88 Cal.App. 4th 1202, 1208–09 (2001) (noting that trial court and California Supreme Court considered, and rejected on the merits, due process and equal protection challenges to application of SVPA); People v. Buffington, 74 Cal.App. 4th 1149, 1152 (1999) (addressing merits of due process and equal protection challenges to SVPA).

Finally, though Younger abstention does not apply in cases where extraordinary circumstances threaten great, immediate and irreparable injury, see Younger, 401 U.S. at 45–46, 53–54 (irreparable injury shown where statute flagrantly and patently violative of express constitutional prohibitions); Perez v. Ledesma, 401 U.S. 82, 85, 91 S.Ct. 674 (1971) (federal injunctive relief in pending state prosecutions proper in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction), Petitioner fails to demonstrate that this is such a case.

Accordingly, it is appropriate for this Court to abstain from considering Petitioner's challenges to the pending SVPA proceedings and to dismiss the habeas petition and this action without prejudice. See Babinski v. Voss, 323 Fed.Appx. 617 (9th Cir.2009) (affirming dismissal on Younger abstention grounds of habeas petition challenging ongoing California SVPA proceedings); see also, e.g., Validivia v. Unknown, 2015 WL 1565435, *1–*2 (C.D.Cal. Apr. 8, 2015) (John Walter, J.) (holding that Younger doctrine called for Court to abstain from exercising jurisdiction over state prisoner's wholly unexhausted habeas petition); Hooper–Turner v. Folsom Women's Facility, 2014 WL 1292102, *1–*2 (C.D.Cal. Mar. 27, 2014) (Audrey Collins, J.) (same); Romero v. Lewis, 2010 WL 5579886, *3 (C.D.Cal. Dec. 8, 2010) (same).

Moreover, the U.S. Supreme Court has held that federal courts can abstain in cases that present a federal constitutional issue, but which can be mooted or altered by a state court determination.

5

1   Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813-14 (1976); County of

2   Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959); see also Quackenbush v. Allstate Ins.

3   Co., 517 U.S. 706, 716-17 (1996).  In determining whether it should abstain, a federal court should

4   consider problems which can occur when two courts assume jurisdiction over the same claim--the

5   inconvenience of the federal forum, the avoidance of piecemeal litigation, and the order in which the

6   parties filed the state and federal proceedings.  Colorado River, 424 at 818-19.  "Only in the most

7   unusual circumstances is a defendant entitled to have federal interposition by way of injunction of

8   habeas corpus until after the jury comes in, judgment has been appealed from, and the case concluded

9   in the state courts."  Drury v. Cox, 457 F.2d 764, 764-65 (9th Cir. 1972).  The special circumstances

10  that may warrant pretrial federal habeas intervention include harassment, bad faith prosecutions and

11  other circumstances where irreparable harm can be proven.  Carden v. State of Montana, 626 F.2d 82,

12  83-84 (9th Cir. 1980).

13      The law of habeas corpus also provides guidance on when a district court should abstain from

14  review of a claim.  In order to be granted federal habeas corpus relief, the petition must have

15  exhausted his available state remedies. 28 U.S.C. § 2254(b).  The rule of exhaustion is based on

16  comity to the state court and gives the state court the initial opportunity to correct the state's alleged

17  constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455

18  U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).   The exhaustion

19  requirement can be satisfied by providing the highest state court with a full and fair opportunity to

20  consider each claim before presenting it to the federal court.  Picard v. Connor, 404 U.S. 270, 276, 92

21  S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  In the instant case, it

22  appears that Petitioner has never fully exhausted the claim for which he currently seeks federal relief

23  because, when the SVP petition was not resolved in the Superior Court at the conclusion of 2015,

24  Petitioner did not present this issue to the California Supreme Court, choosing instead to come directly

25  to this Court.

26      Indeed, far from being exhausted, the matter is ongoing and pending an initial resolution in the

27  California courts.  Thus, in essence, Petitioner is asking this Court to step into the middle of a state

28  civil commitment proceeding and overturn a state court's preliminary determination of dangerousness.

6

The court declines to do so and will abstain under <u>Younger</u>.  The state civil commitment proceedings that are pending are judicial in nature, and the proceedings involve the important state interest of protecting the public from sexual predators.  <u>Dannenberg v. Nakahara</u>, 1998 WL 661467 (N.D. Cal.); <u>see</u> <u>MacKenzie v. Ahlin</u>, 2015 WL 4339370, at *2 (C.D. Cal. July 13, 2015).

As noted in <u>Dannenberg</u>, "there is no indication that California's civil commitment proceedings for sexually violent predators do not permit [Petitioner] an adequate opportunity to raise the constitutional issue" which Petitioner raises in this court.  <u>Id</u>. at *2.  Abstention is justified in this instance because, as Respondent recognizes, Petitioner may be found to not be an SVP at trial, or on appeal, and the issues he has raised in the instant federal petition would then be moot.

Further, if committed, Petitioner may argue on appeal that his commitment was in violation of the law, e.g., that the delay in bringing the commitment proceedings violated his federal due process rights.  The Court also notes that the dismissal of Petitioner's instant habeas claim does not prejudice any constitutional claim that Petitioner may bring after a trial the merits of his SVP status.  Under the rationale of <u>Younger</u>, the petition shall be dismissed, without prejudice to re-filing after the civil commitment proceedings, including any appeal, are completed.  Although Petitioner impliedly argues that this Court may review the instant petition because he is challenging the probable cause hearing determination, the state court proceedings are nonetheless ongoing and the instant claim may be mooted by future state court action.  Thus, the principles outlined in <u>Younger</u> are applicable and Petitioner has made no showing of extraordinary circumstances to justify this Court to interfere.  <u>See e.g.</u> <u>Milinich v. Babcock</u>, 2003 WL 1936124 (N.D. Cal.) (exercising abstention before trial on civil commitment had occurred.)  Petitioner's case presents no special circumstances sufficient to justify federal intervention.  Petitioner has not alleged harassment or bad faith on the part of the prosecution, nor has Petitioner demonstrated that sufficient irreparable injury will occur if Petitioner is to remain committed pending trial.

C.  <u>Lack of Jurisdiction</u>

Respondent's motion to dismiss also contends that the Court lacks habeas jurisdiction under § 2241 because Petitioner has not alleged a constitutional violation.  The Court agrees.

Under state law "[t]he SVPA does not specify a time by which a trial on a commitment

proceeding under the SVPA must be commenced or concluded." <u>People v. Sanders</u>, 203 Cal.App. 4th 839, 846 (Cal.Ct.App.2012); <u>see also</u> <u>Litmon v. Superior Court</u>, 123 Cal.App. 4th 1156, 1170–71 (Cal.Ct.App.2004) ("the SVPA sets no time period within which the probable cause hearing preceding a recommitment must be held.  And, once probable cause is found, the SVPA sets no time period within which the trial must be held ...."); <u>see also</u> <u>Seeboth v. Allenby</u>, 789 F.3d 1099 (9th Cir.2015) (lack of a time provision in the SVPA for recommitment trial does not deprive SVPs equal protection of the laws).

The Sixth Amendment to the U.S. Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  A speedy trial is a fundamental right guaranteed to the criminally accused by the Sixth Amendment and imposed on the states by the Due Process Clause.  <u>Klopfer v. North Carolina</u>, 386 U.S. 213, 223 (1967). Since, as Respondent correctly points out, a commitment proceeding under the SVPA is not a criminal prosecution, the Sixth Amendment right to a speedy trial does <u>not</u> apply.  See <u>United States v. Perry</u>, 788 F.2d 100, 118 (3d Cir.1986) ("The speedy trial clause deals with the timeliness of criminal prosecutions, not civil commitment proceedings."); <u>see generally</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346, 364–65 (1997) (the fact that state chose to afford persons undergoing SVP proceedings certain procedural and evidentiary protections applicable in criminal trials "does not transform a civil commitment proceeding into a criminal prosecution").

The Supreme Court has not addressed whether there is a due process right to a speedy civil commitment trial.  Nevertheless, some courts have analyzed speedy trial claims in the SVPA commitment context under the four-part test set forth in <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972),[1] for Sixth Amendment speedy trial claims. <u>See</u> <u>Page v. Lockyer</u>, 200 Fed. Appx. 727 (9th Cir.2006) (analyzing and rejecting Sixth Amendment speedy trial claim from petitioner's SVPA commitment); <u>Coleman v. Mayberg</u>, 2005 WL 1876061, *6 (N.D.Cal. Aug. 8, 2005) (applying <u>Barker</u> analysis to find that five-year delay in holding commitment hearing did not violate petitioner's speedy trial rights); <u>People v. Litmon</u>, 162 Cal.App. 4th 383, 395–406 (2008) (finding that delay in bringing

---

[1] The four <u>Barker</u> factors are (1) the length of the delay; (2) the reason for the delay; (3) the petitioner's assertion of his right; and (4) prejudice to the petitioner. <u>Barker</u>, 407 U.S. at 532.

recommitment petition violated due process under <u>Barker</u> and <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976)); <u>Sisneroz v. California</u>, 2009 WL 302280, *7–11 (E.D.Cal. Feb. 6, 2009) (denying claim that delay in bringing recommitment petition to trial violated due process because petitioner showed no prejudice).

Even assuming, however, the existence of a due process right to a speedy civil commitment trial and therefore considering the four <u>Barker</u> factors, as well as looking at record in this case, Petitioner is not entitled to relief.  The first factor, the length of the delay, would appear to weigh in favor of Petitioner.  In the Court's view, a delay of eighteen years at the time this petition was filed is facially unreasonable and of sufficient duration to meet the first <u>Barker</u> factor.

Petitioner, however, loses on the remaining three factors.  With respect to the second <u>Barker</u> factor, the reason for the delay, much, if not all, of it has been due entirely to Petitioner's actions. The record reflects numerous continuances, the majority of which were at Petitioner's request, and all were granted *at the least* with Petitioner's lack of opposition. There are no indications or arguments that Petitioner objected to any continuances requested by the district attorney.  Over those years, it appears that Petitioner may have also requested a new probable cause hearing, new evaluations, and filed numerous motions in the superior court and in the state appellate courts.   Petitioner has also had multiple appointed attorneys and, whenever a new attorney was appointed, it appears that significant delays ensued as the new attorney became familiar with an increasingly voluminous case file.

Deliberate delay by the government "'to hamper the defense' weighs heavily against the prosecution." <u>Vermont v. Brillon</u>, 556 U.S. 81, 90 (2009) (quoting <u>Barker</u>, 407 U.S. at 531).  "In contrast, delay caused by the defense weighs against the defendant ... under standard waiver doctrine." <u>Id</u>.  Because defense attorneys act as a defendant's agent, and are not state actors, "delay caused by the defendant's counsel is also charged against the defendant" whether counsel is privately retained or appointed by the state. <u>Id</u>. at 90–91; <u>see also</u> <u>United States v. Shetty</u>, 130 F.3d 1324, 1331 (9th Cir.1997) (no due process violation where defendant failed to object to continuances).

Moreover, while Petitioner has insinuated that his due process rights have been violated by such delay, he has failed to present specific arguments concerning his right to a speedy trial. Nor has Petitioner addressed the specific arguments raised in Respondent's motion to dismiss attributing the

numerous delays in commencing the trial to the strategy of Petitioner and his counsel to delay the trial until Petitioner reached the age of sixty to increase the likelihood that he would not be found sufficiently dangerous to justify further commitment. As mentioned previously, a review of the record demonstrates that the reasons for delay are due almost entirely to Petitioner's own actions and the actions of his counsel, not to the district attorney's actions.  Thus, this <u>Barker</u> factor weighs against petitioner as well.

With respect to the third <u>Barker</u> factor, Petitioner's assertion of his right to a speedy trial, the record suggests that Petitioner first asserted his right on January 8, 2016, some nineteen years after the original petition was filed. Prior to that date, there is no record of Petitioner objecting in the superior court to any delay.  A petitioner's assertion of his speedy trial right is "entitled to strong evidentiary weight in determining whether the [petitioner] [was] deprived of the right." <u>Barker</u>, 407 U.S. at 531–32.  The "failure to assert the right will make it difficult for a [petitioner] to prove that he was denied a speedy trial." <u>Id</u>. at 532.  "[I]f delay is attributable to the [petitioner], then his waiver may be given effect under standard waiver doctrine." <u>Id</u>. at 529.  However, even repeated assertions of a Petitioner's speedy trial right must be viewed in light of the petitioner's other conduct.  <u>United States v. Loud Hawk</u>, 474 U.S. 302, 314–15 (1986).  A petitioner may not establish that he appropriately asserted his speedy right when at the same time he was asserting the right he was filing motions and appeals that contributed to the delay in his trial. <u>See</u> <u>Id</u>. at 314–15 (finding defendants' repeated assertions of their speedy trial rights were contradicted by their filings of frivolous petitions in the appellate courts and of repeated and unsuccessful motions in the trial court, which contributed to delay in their trial). The nineteen-year delay before Petitioner first asserted his right to a speedy trial, combined with the numerous filings in state court that further delayed a trial on the petition, all weigh against him and require that the Court find that the third <u>Barker</u> factor has not been met.

With respect to the fourth <u>Barker</u> factor, prejudice to Petitioner, he must demonstrate that he was prejudiced by the delay. While prejudice should be presumed if Respondent is responsible for the delay, in this case, where Petitioner is responsible for the delay, he must demonstrate *actual* prejudice. <u>United States v. Aquirre</u>, 994 F.2d 1454, 1457–58 (9th Cir.1993).  Actual prejudice can be shown in three ways: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the

possibility that the accused's defense will be impaired. <u>Barker</u>, 407 U.S. at 532.

Petitioner has failed to present any arguments regarding how he has been prejudiced by the delay. Nor does a review of the record in this case demonstrate any actual prejudice. There are no allegations of oppressive pretrial, incarceration and the conditions of civil commitment are less restrictive than prison incarceration. In addition, Petitioner also has the ability to receive treatment from the hospital where he is committed. Nor has Petitioner demonstrated any anxiety or concern, and, even if he had made such a showing, much of the delay that would have caused such anxiety has necessarily been attributed to Petitioner himself. Finally, Petitioner has not shown that his defense has been impaired by the delay. In fact, to the contrary, it appears that the delay could actually benefit Petitioner if he avails himself of the treatment at the hospital and he has received updated evaluations following several years of commitment that could reflect positive aspects from his treatment. Also, as mentioned, to the extent that individuals over the age of sixty, such as Petitioner, are graded at a lower degree of dangerousness, the delay has again worked to Petitioner's advantage rather than to his detriment.  In sum, Petitioner has failed to demonstrate prejudice, and thus this final <u>Barker</u> factor is not met.

Thus, Petitioner has not shown a speedy trial violation or a due process violation resulting from excessive delay for all the reasons discussed above. Even assuming, therefore, for the sake of argument, that a speedy trial violation applies in the context of a civil commitment proceeding, there has been no due process violation despite the delay.  If Petitioner is civilly committed after trial, he may file a habeas petition once he has properly exhausted the claims in state court.

Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-336 (2003); 28 U.S.C. § 2253. If a court denied the petition, the court may only issue a certificate of appealability when the petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed

further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

The Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.   Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

## ORDER

For the foregoing reasons, the Court **ORDERS**:

1. Respondent's motion to dismiss (Doc. 21) is **GRANTED**;

2. The petition for writ of habeas corpus (Doc. 1) is **DISMISSED**;

3. Petitioner's motion to dismiss commitment petition (Doc. 23) is **DENIED**;

4. The Clerk of the Court is DIRECTED to enter judgment and close the case; and,

5. The Court **DECLINES** to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **May 25, 2016**                          **/s/ Jennifer L. Thurston**
                                                                 UNITED STATES MAGISTRATE JUDGE